UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

C.E. FLUSHING, LLC,   11 CV 3477 (SLT)(CLP)

                     Plaintiff,

                                      ECF CASE

       - against -

TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA,

                     Defendant.


**DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR LEAVE TO FILE AN AMENDED ANSWER AND COUNTERCLAIM**


**LAZARE POTTER & GIACOVAS LLP**
950 Third Avenue
New York, New York 10022
(212) 758-9300
Attorneys for Defendant
Travelers Property Casualty Company of America

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................. 1

**STATEMENT OF FACTS** ........................................................................................................... 2

**ARGUMENT** .................................................................................................................................. 8

    **THE COURT SHOULD GRANT TRAVELERS' MOTION TO AMEND** ....................... 9

        A.   **Plaintiff Cannot Demonstrate Any Undue Delay or Prejudice** ............................... 10

        B.   **Travelers' Proposed Amendments are not Futile** ....................................................... 12

**CONCLUSION** ............................................................................................................................ 15

## TABLE OF AUTHORITIES

Abbatiello v. Monsanto Co.,
571 F. Supp.2d 548 (S.D.N.Y. 2008) .............................................................................................. 9

Alexandre v. Town of Hempstead,
275 F.R.D. 94 (E.D.N.Y. 2011) ....................................................................................................... 9

Bernhard v. Cent. Parking Sys. of N.Y., Inc.,
10-CV-5596, 2012 U.S. Dist. LEXIS 54832 (E.D.N.Y. 2012) ....................................................... 9

Block v. First Blood Assocs.,
988 F.2d 344 (2d Cir. 1993) ........................................................................................................ 9, 10

Concord Asset Management v. Intercredit Corp.,
1994 U.S. Dist. LEXIS 5854 (S.D.N.Y. 1994) ............................................................................. 13

Curacao Trading Co. v. Fed. Ins. Co.,
50 F. Supp. 441 (S.D.N.Y. 1943),
aff'd, 137 F.2d 911, 1943 U.S. App. LEXIS 2917 (2d Cir. 1943) ............................................... 13

G. Simons & Co. S.A. v. New Bar of N. Am.,
2005 U.S. Dist. LEXIS 9043 (S.D.N.Y. 2005),
aff'd, 2006 U.S. App. LEXIS 7260 (2d Cir. March 16, 2006) ..................................................... 13

Kermanshahchi v. Republic Nat'l Bank, S.A.,
87 Civ. 2599, 1991 U.S. Dist. LEXIS 12166 (S.D.N.Y. Sept. 3, 1991) ....................................... 10

Monahan v. NYC Dep't of Corrections,
214 F.3d 275 (2d Cir. 2000) ............................................................................................................ 9

Murphy v. Suffolk County Cmty. College,
2011 U.S. Dist. LEXIS 136983 (S.D.N.Y. 2011) ......................................................................... 12

New York v. Panex Indus., Inc.,
1997 U.S. Dist. LEXIS 3163 (W.D.N.Y. Mar. 14, 1997) ............................................................. 10

Rachman Bag Co. v. Liberty Mut. Ins. Co.,
46 F.3d 230 (2d Cir. 1995) .............................................................................................................. 9

Resorts and Motel Advancement Development Agency, Ltd. v. Sloan,
160 F.R.D. 449 (S.D.N.Y. 1995) .................................................................................................... 9

Saxholm AS v. Dynal, Inc.,
938 F. Supp. 120 (E.D.N.Y. 1996) ............................................................................................... 10

Silva Run Worldwide Ltd v. Gaming Lottery Com.,
  215 F.R.D. 105 (S.D.N.Y. 2003) .................................................................................................. 10

State Teachers Ret. Bd. v. Fluor Corp.,
  654 F.2d 843 (2d Cir. 1981)......................................................................................................... 9

Yves St. Laurent Parfums, S.A. v. Costco Wholesaler Com.,
  (LBS)(HBP) 2010 U.S. Dist. LEXIS 62967 at *6 (S.D.N.Y. June 24, 2010) ............................... 13

**Other Authorities**
  N.Y. Ins. Law § 3401 (2012) ....................................................................................................... 13

**PRELIMINARY STATEMENT**

Defendant Travelers Property Casualty Company of America ("Travelers") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure ("FRCP"), for leave to amend its answer and assert a counterclaim. The Court is also respectfully referred to the declarations of Richard H. Greubel ("8/15/12 Greubel Dec.") and Rippi Gill, Esq. ("8/20/12 Gill Dec.").

This first-party coverage action follows Plaintiff C.E. Flushing, LLC's ("Flushing") claim that a December 9, 2009 rain event caused water damage to Tower 3 (the "Premises") of the "Flushing Town Center" construction project (the "Project") at 40-22 College Point Boulevard, Flushing, New York. In connection with the Project, Travelers issued a builders' risk policy to named insured Flushing. The Policy's Mortgage Endorsement named Eurohypo AG, New York ("Eurohypo") as the mortgage holder. Following the alleged loss, Travelers denied coverage to Flushing based upon, among other things, late notice and various exclusions. Flushing then brought this action. Eurohypo separately sought recovery from Travelers, which request Travelers denied, and then – eight months after Flushing brought its action – Eurohypo brought a separate action that is also now pending before this Court. Eurohypo seeks recovery for the same "hard costs" that Flushing demands, as well as "soft costs."

Travelers now requests leave to amend its answer to include an "insurable interest" defense and a counterclaim with respect to its rights against Flushing for any amounts it might ultimately have to pay to Eurohypo. Travelers' motion should be granted because there is no undue delay or prejudice here. Specifically,

> --- This case is still in the early stages of discovery. No depositions or dispositive motions have yet been scheduled, and written discovery is still in progress. In any event, any possible delay or prejudice in specifying an "insurable interest" defense would be due to Flushing's dogged refusal to provide discovery on the

---   issue of its Premises' ownership.  Despite Travelers' repeated requests, Flushing did not provide its supplemental discovery responses until August 17, 2012 – one business day before this motion.  Moreover, the Eurohypo Action – the reason for Travelers' proposed counterclaim – was not even filed until seven months after Travelers' original answer in this case.  (*Infra* pp. 4 to 7).

---   In any event, Flushing has not and cannot show that the proposed amendments would require Flushing to expend significant additional resources on discovery. Nor would the proposed amendments delay the resolution of the dispute.  (*Infra* pp. 10 to 12).

---   Further, Plaintiff cannot claim surprise.  For example, Plaintiff here has the burden of proving that there was a loss to "Covered Property," which the Policy defines as property Flushing owns.  In fact, Flushing explicitly alleged that Flushing owned the Premises.  Moreover, Travelers' Sixth and Eighth Defenses state that coverage is limited to i) property owned by Flushing and/or ii) Flushing's "financial interest" in the Premises. (*Infra* p. 12).  Thus, it is not at all clear that Travelers even needs to amend its answer to include a separate "insurable interest" defense, given the above.  Travelers brings this motion in an abundance of caution only because Flushing – as part of its effort to avoid producing the ownership information – expressed the view that this defense was not in the answer.

---   Moreover, Plaintiff cannot demonstrate that the proposed amendments are "futile"; they are, in fact, meritorious.  (*Infra* pp. 12 to 14).

Thus, Travelers respectfully submits that, under the Federal Rules' liberal standards dictating that such leave should be "freely given," its motion should be granted.

## STATEMENT OF FACTS

**The Travelers Policy**

Travelers issued builders' risk policy number QT-660-4274B945-TIL-09 to named insured Flushing (the "Policy") with a coverage period of July 1, 2009 to March 30, 2010. (8/15/12 Greubel Dec. at ¶ 3, Ex. "A").  The Policy included an IM PAK Coverage Form which, as a threshold matter, covered only "direct physical loss of or damage to Covered Property …." (8/15/12 Greubel Dec. at ¶ 3, Ex. "A").  The Policy defines "Covered Property" as "Builders' Risk," which means "[p]roperty described in the Declarations under 'Builders Risk' owned by

2

*you* [*i.e.*, Flushing] or for which [Flushing is] legally liable consisting of … [b]uildings or structures ….." (8/15/12 Greubel Dec. at ¶ 3, Ex. "A" [pp.1 and 14]])(emphasis added). The Policy's Loss Payment provision provides, in part, that Travelers "will not pay you more than your [*i.e.*, Flushing's] financial interest in the Covered Property." (8/15/12 Greubel Dec. at ¶ 3, Ex. "A").

The Policy also includes a Mortgage Holder Conditions Endorsement ("the Mortgage Endorsement") which provides, in part:

> 2. We will pay for covered "loss" to Covered Property to each mortgage holder shown in the Schedule [i.e., Eurohypo] in their order of precedence, as interests may appear.
>
> \* \* \* \*
>
> 5. If we pay the mortgage holder for any "loss" and deny payment to you [i.e., Flushing] because of your acts or because you have failed to comply with the terms of IM PAK Coverage Form:
>
>> a. The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
>>
>> b. The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.
>
> At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.
>
> \* \* \* \*

(8/15/12 Greubel Dec. at ¶ 3, Ex. "A").

**The Flushing Action**

On May 25, 2011, Flushing sued Travelers seeking coverage for its alleged property damage to Tower 3. (8/20/12 Gill Dec. at ¶ 2, Ex. "E").[1] Specifically, Flushing claims that this

---

[1] Travelers previously disclaimed coverage to Flushing after the conclusion of its investigation on September 13, 2010. (8/15/12 Greubel Dec. at ¶ 4, Ex. "B").

3

action "arises from water damage suffered during construction to the portion of the Project known as 'Tower 3' *which is owned by Flushing* and insured by the Policy." (8/20/12 Gill Dec. at ¶ 2, Ex. "E" at ¶ 14)(emphasis added).

Travelers served its Answer on June 8, 2011. (8/20/12 Gill Dec. at ¶ 2, Ex. "F"). With respect to Flushing's allegation that it owned Tower 3 of the Premises, Travelers denied knowledge and information sufficient to form a belief as to the truth of the allegation. (8/20/12 Gill Dec. at ¶ 2, Ex. "F" at ¶ 1). Travelers' Sixth Defense denies coverage to the extent that the loss did not involve "Covered Property" (*i.e.,* property that is owned by Flushing or for which Flushing is legally liable) and Travelers' Eighth Defense includes reference to the Policy's Loss Payment provisions which limits recovery to, at most, Flushing's financial interest in the subject property. (8/20/12 Gill Dec. at ¶ 2, Ex. "F" at ¶¶ 33, 37).[2]

**The Repeated Requests for Ownership/Financial Interest Information**

On September 13, 2011, Travelers served its First Set of Interrogatories and First Request for the Production of Documents requesting, among other things, information and documents concerning Flushing's alleged ownership of the Premises. (8/20/12 Gill Dec. at ¶ 2, Ex. "G" [Interrogatory No. 2 and Document Request No. 2]). On January 9, 2012, Flushing responded by specifically objecting to Travelers' demand for documents on ownership information, claiming – despite their own allegations and clear policy language – that "they have no relevance" to this matter.[3] Equally surprising was the circular nature of Flushing's interrogatory response.

---

[2]   Thus, it is not clear that Travelers even needs to amend its answer to include a separate "insurable interest" defense, given these defenses. In an abundance of caution, Travelers here seeks to include an "insurable interest" defense because Flushing previously expressed the view that this defense was not in the answer.

[3]   *Document Request No. 2*

   All originals and all originals and copies of any and all documents *concerning*: Ownership documents, deeds, contracts, agreements or other documents concerning, related to, showing or reflecting any ownership interest(s) in the Premises and/or the relationship between and among any entities having such

4

Flushing merely stated that "numerous entities have or have had legal or equitable interests in the Premises" and it referred Travelers to its document production in accordance with Federal Rule 33(d).[4]  Flushing's document production, however, explicitly excluded any ownership documents. (8/20/12 Gill Dec. at ¶ 2, Ex. "H") (*infra* pp. 5 to 6).

On January 11, 2012, two days after the parties exchanged written discovery, they participated in a telephone conference before Magistrate Judge Pollak. (8/20/12 Gill Dec. at ¶ 2, Ex. "J").  At that time, the Court directed the parties to review the respective document productions with a focus – for the time being – on the late notice issue and confer to resolve any disputes. (8/20/12 Gill Dec. at ¶ 2, Ex. "J").

Thereafter, Travelers repeatedly requested that Flushing provide the ownership/financial interest information.  Specifically,

---

an ownership interest, including, but not limited, to any such documents that refer to Muss Development Corporation (or any other "Muss" entity), Plaintiff, Onex Partners, Flushing Town Center III, LLC, and any other entities affiliated and/or jointly owned with any of those entities.

RESPONSE: In addition to Flushing's General Objections which are incorporated by reference herein, Flushing specifically objects to this request on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, duplicative of other information already supplied or that is in Travelers' possession.  Moreover, it seeks the production of documents that are neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  More specifically, ownership documents, deeds, contracts, agreements or other documents concerning, related to, showing or reflecting ownership interest(s) in the Premises and/or the relationship between and among any entities having such an ownership interest have no relevance to the issues in this matter.

(8/20/12 Gill Dec. at ¶ 2, Ex. "H").

[4]   *Interrogatory No. 2*

Identify any entity or individual(s) that owned the Premises during the relevant time period, the extent of each's ownership and describe their relationship, if any, to each other.

RESPONSE: Flushing objects to this interrogatory on the ground that it is overbroad, unduly burdensome, seeks information neither relevant to the action nor reasonably calculated to lead to the discovery of admissible evidence, and is unduly vague due to its use of the undefined terms "relevant time period" and "ownership."  Subject to and without waiving all foregoing objections, Flushing states that numerous entities have or have had legal or equitable interests in the Premises.  Flushing further responds by referring to its document production in accordance with Fed. R. Civ. P. 33(d).

(8/20/12 Gill Dec. at ¶ 2, Ex. "I").

- On February 27, 2012, Travelers wrote to Flushing advising of its deficient and inconsistent responses concerning its ownership/financial interest in the Premises. (8/20/12 Gill Dec. at ¶ 2, Ex. "K").

- On March 28, 2012, the parties appeared for a status conference before Judge Pollak, (8/20/12 Gill Dec. at ¶ 2, Ex. "L"). During the conference, Travelers again pointed out that Flushing had not provided any response to its requests for discovery concerning Flushing's ownership/financial interest in the Premises, to which Flushing responded that it would address this issue at a meet and confer session. (8/20/12 Gill Dec. at ¶ 3).

- On May 7, 2012, Travelers wrote to Flushing (again) identifying the ownership/financial interest issue as a topic for the upcoming meet and confer session. (8/20/12 Gill Dec. at ¶ 2, Ex. "M").

- On June 21, 2012, the parties conducted an in-person meet and confer session, during which Travelers again requested the ownership/financial interest information. (8/20/12 Gill Dec. at ¶ 4). Although counsel initially indicated that his "client" owned the Premises, counsel then stated that he would have to look into the matter further and might provide a supplemental response concerning this information. (8/20/12 Gill Dec. at ¶ 4).

- On June 29, 2012, during a conference call by and among counsel for both parties, Travelers' counsel again requested this discovery. (8/20/12 Gill Dec. at ¶ 5). Flushing still did not provide the requested discovery. Flushing – in an apparent effort to avoid the production – took the position that Travelers' answer did not mention "insurable interest." (8/20/12 Gill Dec. at ¶ 5).

- On July 11, 2012, the parties appeared for a status conference before Judge Pollak. During and after the conference, Travelers requested a court order requiring Flushing to provide the outstanding ownership/financial interest discovery. The Court thereafter ordered Flushing to produce this information. (8/20/12 Gill Dec. at ¶ 2, Ex. "N").

Despite these repeated requests, Flushing did not provide any further response until August 17, 2012, when Flushing produced its most recent supplemental discovery responses and supplemental document production. (8/20/12 Gill Dec. at ¶ 2, Ex. "O").

**Eurohypo's Subsequent Separate Action Against Travelers**

After Flushing brought suit, Eurohypo collaborated with Flushing in connection with its claims under the Mortgage Endorsement. (8/20/12 Gill Dec. at ¶ 2, Ex. "P"). Flushing's counsel then expressed concern to Eurohypo's counsel regarding whether, pursuant to the Mortgage Endorsement provisions, Travelers could potentially seek payment from Flushing if it settled any claim with Eurohypo. (8/20/12 Gill Dec. at ¶ 2, Ex. "P").

Many months later, Eurohypo wrote to Travelers demanding payment under the Policy for the same "hard costs" that Flushing seeks, as well as certain "soft costs." (8/15/12 Greubel Dec. at ¶ 5, Exs. "C"; 8/20/12 Gill Dec. at ¶ 2, Ex. "Q"). On December 14, 2011, Travelers denied Eurohypo's request. (8/15/12 Greubel Dec. at ¶ 6, Ex. "D"). On January 26, 2012, Eurohypo sued Travelers for "hard costs" and "soft costs." (8/20/12 Gill Dec. at ¶ 2, Ex. "R"). On March 23, 2012, Travelers Answered Eurohypo's complaint. (8/20/12 Gill Dec. at ¶ 2, Ex. "S").

**Disclosure of Ownership/Financial Interest Information in the Eurohypo Action**

On July 16, 2012, Eurohypo served its responses to Travelers' First Set of Interrogatories identifying numerous entities with an apparent ownership interest in the Premises. (8/20/12 Gill Dec. at ¶ 2, Ex. "T").[5] Flushing was not among the entities identified as the Premises' owner.

---

5   *Interrogatory No. 2*

> Identify all persons and organizations that owned (or otherwise held a financial interest in) Tower 3 of the Premises on [sic] between January 1, 2009 and present and provide copies of all documentation supporting any such mortgage, financial and/or ownership interest.
>
> RESPONSE: Eurohypo objects to this Interrogatory on the grounds that the Interrogatory is overbroad, that identification of information responsive to the Interrogatory would be unduly burdensome, and that the Interrogatory seeks information that is not relevant to the subject matter of this action. Eurohypo also objects to this Interrogatory to the extent that the Interrogatory improperly seeks the production of documents. Eurohypo further objects to this Interrogatory to the extent that the Interrogatory seeks information already within the possession, custody, or control of Travelers through discovery taken in the action styled C.E. Flushing, LLC v. Travelers Property Casualty Company of America, Civil Action No. 11-CV-3477-SLT-CLP (E.D.N.Y.) (the "Flushing Action") or through some other source.

7

(8/20/12 Gill Dec. at ¶ 2, Ex. "T" [Interrogatory No. 2]). On August 17, 2012 – one business day before this motion -- Flushing produced its supplemental discovery responses and supplemental document production. (8/20/12 Gill Dec. at ¶ 2, Ex. "O"). The documents produced do not appear to lead to a different conclusion. (8/20/12 Gill Dec. at ¶ 6).

**Motion to Amend**

During the July 11 telephone status conference, *see supra*, Travelers – in an abundance of caution – requested permission to move to amend its Answer to clarify the inclusion of an "insurable interest" defense, as well as a counterclaim based on paragraph five of the Mortgage Endorsement, and the Court set a briefing schedule. (8/20/12 Gill Dec. at ¶ 2, Ex. "N"). A copy of Travelers' proposed First Amended Answer and Counterclaim is attached to the accompanying 8/20/12 Gill Declaration as Exhibit "U."

**Current Procedural Posture**

While the parties are in the process of exchanging written discovery – *i.e.,* documents and interrogatories – depositions have not yet started. (8/20/12 Gill Dec. at ¶ 6). In fact, the Court has directed the parties to, for the time being, focus their objections and "meet and confers" on issues relating only to Travelers' notice defense. (8/20/12 Gill Dec. at ¶ 2, Ex. "J"). Thus, discovery in this matter is still at its early stages.

## ARGUMENT

---

Subject to and without waiving any general or specific objection, Eurohypo responds as follows: *Flushing Town Center III, L.P.; FTC Residential Company I, L.P.; FTC Residential Company II, L.P.; FTC Residential Company III, L.P.;* Eurohypo AG, New York Branch; Wells Fargo Bank, N.A. (as successor-by-merger to Wachovia Bank, N.A.); Hypo Real Estate Capital Corporation; Bank of America, N.A. (as successor by merger to LaSalle Bank National Association); Allied Irish Banks, P.L.C.; Emigrant Realty Finance, LLC; Amalgamated Bank; Deutsche Hypothekenbank (Actien-Gesellschaft); Shanghai Commercial Bank Ltd., New York Branch; The Bank of East Asia, Limited, New York Branch; Webster Bank, N.A.; Landesbank Baden-Wurttemburg, New York Branch; and Onex Real Estate Flushing II LP.

(8/20/12 Gill Dec. at ¶ 2, Ex. "T") (emphasis added).

## THE COURT SHOULD GRANT TRAVELERS' MOTION TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure ("FRCP") permits a party, upon motion, to amend its pleading at any time. "The court should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). This rule "reflects two of the most important principles behind the Federal Rules: [i] pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated …., and [ii] 'mere technicalities' should not prevent cases from being decided on the merits…." Monahan v. NYC Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000) (citations omitted). In fact, amendments are generally favored because they "facilitate a proper decision on the merits." Bernhard v. Cent. Parking Sys. of N.Y., Inc., 10-CV-5596, 2012 U.S. Dist. LEXIS 54832 (E.D.N.Y. 2012)(internal quotations and citations omitted).

"Thus, absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." Monahan, *supra*. "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Alexandre v. Town of Hempstead, 275 F.R.D. 94, 97 (E.D.N.Y. 2011). Mere delay, "absent a showing of bad faith or undue prejudice" is insufficient to defeat a motion to amend. State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).[6]

---

[6] See also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230 (2d Cir. 1995) (motion to amend four years after complaint was filed, was granted; finding that delay alone does not usually warrant denial of leave to amend); Abbatiello v. Monsanto Co., 571 F. Supp.2d 548 (S.D.N.Y. 2008) (granting leave to file a proposed amendment, motivated by gathering of additional information post-filing, reasoning that mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend a pleading); Resorts and Motel Advancement Development Agency, Ltd. v. Sloan, 160 F.R.D. 449 (S.D.N.Y. 1995) (granting motion to amend answer to include counterclaims filed two years after initial answer as delay alone is not sufficient basis for denial of motion to amend answer).

Here, Flushing cannot satisfy its burden of proving any of these factors. As detailed below, there is no undue delay or prejudice. In fact, any possible delay would be attributable to Flushing, not Travelers. Nor is there any bad faith or surprise. (*Infra* pp. 10 to 12). Finally, Plaintiff cannot possibly demonstrate that the proposed amendments are "futile"; they are, in fact, meritorious. (*Infra* pp. 12 to 14).

### A. Plaintiff Cannot Demonstrate Any Undue Delay or Prejudice

"The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." New York v. Panex Indus., Inc., 1997 U.S. Dist. LEXIS 3163 (W.D.N.Y. Mar. 14, 1997) (citing Saxholm AS v. Dynal, Inc., 938 F. Supp. 120, 123 (E.D.N.Y. 1996)). In determining what constitutes "prejudice," the courts generally consider whether the new claim or defense would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). There can be no undue prejudice where the delay was due to the discovery process. See generally Silva Run Worldwide Ltd v. Gaming Lottery Com., 215 F.R.D. 105 (S.D.N.Y. 2003); Kermanshahchi v. Republic Nat'l Bank, S.A., 87 Civ. 2599, 1991 U.S. Dist. LEXIS 12166 (S.D.N.Y. Sept. 3, 1991) (granting leave to amend where proposed amendments constitute an effort to incorporate into the pleadings information and theories developed during discovery).

At the outset of this matter, Flushing specifically represented in its Complaint that the Premises were *"owned by Flushing..."* (8/20/12 Gill Dec. at ¶ 2, Ex. "E" at ¶ 14)(emphasis added). Thereafter, from **September 13, 2011** to **July 11, 2012**, Travelers repeatedly requested discovery concerning the ownership of the Premises and the extent, if any, of Flushing's interest

10

in the Premises at the time of the alleged loss. (*Supra* pp. 4 to 6). Flushing, however, refused to produce this information, until – at the earliest -- August 17, 2012 when it produced what it claims to be information responsive to Travelers' prior requests on the ownership issue. (8/20/12 Gill Dec. at ¶ 2, Ex. "O"). One business day later, Travelers made this motion. Moreover, Eurohypo did not sue Travelers until seven months after Travelers filed its answer in the Flushing Action and, therefore, Travelers had no reason to assert its proposed counterclaim at the time it filed its Answer in the Flushing Action.

In any event, there is no need for any significant, additional discovery based on Travelers' proposed amendments. The proposed "insurable interest" defense is coterminous with or, at very least, significantly overlaps with issues already raised in Plaintiff's claim (where, it is alleged, that Flushing supposedly "owned" the Premises; *supra* p. 4), and Travelers' answer (which stated, in its defenses, that the Policy applies only to "Covered Property" owned by Flushing and/or only to the extent of Flushing's financial interest; *supra* p. 4). Nor would Travelers' proposed counterclaim engender any significant, additional discovery because any possible obligation that Flushing might ultimately have under paragraph five of the Mortgage Endorsement would turn on the bases for Travelers' denial of Flushing's claim – i.e., the precise issues already at hand in this litigation. (8/20/12 Gill Dec. at ¶ 2, Ex. "E"). Thus, Flushing will incur little, if any, extra time or expense in conducting discovery in connection with these amendments.

Nor would the proposed amendments delay the resolution of this matter. As stated, discovery in this matter is in the beginning stages. (*Supra* p. 8). While the parties have exchanged some documents, document discovery remains ongoing. In other words, the parties are far away from depositions, let alone trial in this matter. Moreover, the documents exchanged

in the Eurohypo Action, either have already been provided to Flushing or can be provided without delay.[7]

Further, Plaintiff certainly cannot claim surprise. First, Plaintiff, all along, has had the burden of proving loss to "Covered Property" (*e.g.*, property it *owns*), and has alleged as much in its complaint. In addition, Travelers' original answer contained a defense invoking the Policy's Loss Payment provisions which limit any recovery to Flushing's "financial interest" in the property. (8/20/12 Gill Dec. at ¶ 2, Ex. "F" at ¶ 37). Travelers has repeatedly requested the ownership/financial interest information from Flushing. (*Supra* pp. 4 to 6). In any event, Travelers' motion to amend is being made upon receipt of discovery concerning the ownership/financial interest information, which it has been seeking for many months and which has been in Plaintiff's possession since before this action's inception.

Similarly, Plaintiff cannot argue surprise with respect to the proposed counterclaim. In fact, recently-produced documents in the Eurohypo case show that Flushing collaborated with Eurohypo when it was contemplating a claim under the Mortgage Endorsement. (8/20/12 Gill Dec. at ¶ 2, Ex. "P"). Flushing, on its own, raised the concern about Travelers' potential claim under paragraph five of the Mortgage Endorsement. (8/20/12 Gill Dec. at ¶ 2, Ex. "P"). See generally Murphy v. Suffolk County Cmty. College, 2011 U.S. Dist. LEXIS 136983 (S.D.N.Y. 2011).

**B.    Travelers' Proposed Amendments are not Futile**

Travelers' proposed amendments are meritorious and, hence, Plaintiff cannot establish futility. As an initial matter, a motion to amend is not the time for a full-blown examination of the action's merits; the Court need only decide whether there is a set of facts possible under

---

[7] Lastly, Plaintiff has not alleged, nor does there appear to be any possibly relevant need for Plaintiff to bring another action in another jurisdiction.

which the movant might possibly prevail on the proposed amendment. See <u>Concord Asset Management v. Intercredit Corp.</u>, 1994 U.S. Dist. LEXIS 5854 (S.D.N.Y. 1994) (internal citations omitted); <u>Yves St. Laurent Parfums, S.A. v. Costco Wholesaler Com</u>. (LBS)(HBP) 2010 U.S. Dist. LEXIS 62967 at *6 (S.D.N.Y. June 24, 2010) (stating "in assessing the claimed futility of a proposed amended pleading, the court must assume the truth of the factual allegations set forth in the proposed amended pleading"). Here, Travelers is very likely to prevail in connection with each of its proposed amendments.

     First, the "insurable interest" defense is a basic tenet of insurance law; a party may not recover under an insurance policy unless it has an insurable interest in the subject property – regardless of what the policy says. N.Y. Ins. Law § 3401 (2012) ("[no] contract or policy of insurance on property . . . shall be enforceable except for the benefit of some person having an insurable interest in the property insured . . . ."); <u>Curacao Trading Co. v. Fed. Ins. Co.</u>, 50 F. Supp. 441 (S.D.N.Y. 1943), <u>aff'd</u>, 137 F.2d 911, 1943 U.S. App. LEXIS 2917 (2d Cir. 1943) (dismissing complaint seeking recovery under insurance policy where facts established that plaintiff had no insurable interest in the subject property – cocoa beans stored in a warehouse – and noting that another owned all of the merchandise in the warehouse); <u>G. Simons & Co. S.A. v. New Bar of N. Am.</u>, 2005 U.S. Dist. LEXIS 9043 (S.D.N.Y. 2005), <u>aff'd</u>, 2006 U.S. App. LEXIS 7260 (2d Cir. March 16, 2006) (defendant bank did not have an insurable interest in the subject property covered by the policy where bank did not own or have financial interest in such property). Although Flushing alleged in its Complaint that it owned Tower 3 at the time of loss, it now appears that this allegation inaccurate. (8/20/12 Gill Dec. at ¶ 2, Exs. "E" and "O"). To

the extent Flushing does not have an insurable interest in Tower 3, it would not be entitled to recovery under the Policy.[8]

Travelers proposed counter-claim is also meritorious. Paragraph five of the Mortgage Endorsement speaks for itself – it unambiguously gives Travelers certain rights against Flushing, depending on the bases for denying Flushing's claim and if Travelers is forced to pay the mortgagee. (*Supra* p. 3). In fact, Flushing, itself, expressed concern about this potential claim well before Eurohypo commenced its action against Travelers (*Supra* p. 12).

---

[8] As shown above, it is Flushing's clear burden to show that the loss involved "Covered Property" – that is, property that *it* owned or for which *it* is legally liable; if it cannot sustain this burden, Flushing is not entitled to coverage. (*supra* pp. 2 to 3). By moving to amend its answer to explicitly include an "insurable interest" defense, Travelers does not mean to suggest that Flushing is relieved of that burden. Nor does Travelers assume the burden of establishing that Flushing lacks a "financial interest" (under the Loss Payment provision) or an "insurable interest." Again, Travelers is making this motion in an abundance of caution for the reasons stated above.

14

**CONCLUSION**

For all the reasons stated herein and in its moving papers, Travelers respectfully asks this Court to grant its motion to amend its answer in its entirety.

Dated: New York, New York
      August 20, 2012

                                    LAZARE POTTER & GIACOVAS LLP

                                    By:   s/ Rippi Gill
                                           Stephen M. Lazare (SL-2243)
                                           Andrew Premisler (AP-0811)
                                           Rippi Gill (RG-5338)
                                  950 Third Avenue
                                  New York, New York 10022
                                  (212) 758-9300
                                  *Attorneys for Defendant Travelers Property Casualty Company of America*

TO:    K&L GATES LLP
         Anthony P. La Rocco, Esq.
         Robert F. Pawlowski, Esq.
         One Newark Center, 10th Floor
         Newark, New Jersey 07102
         (973) 848-4000
         *Attorneys for Plaintiff*
         Via ECF